### RICHARD v. CANNING et al.*
#### No. 14866.

Court of Appeal of Louisiana. Orleans.
Jan. 21, 1935.

Cobb & Jones and Herman M. Baginsky, all of New Orleans, for appellant.

Edward Rightor, of New Orleans, for appellee Canning.

Leslie P. Beard, of New Orleans, for appellee Triegle.

JANVIER, Judge.

In this action ex delicto Newton M. Richard, Jr., who was injured in an automobile collision between the car of Matthew F. Canning, in which he was riding as a guest, and another automobile owned and operated by Henry Triegle, Jr., seeks recovery for his injuries and asks for judgment in the sum of $10,719 solidarily against Canning and Triegle.

Triegle denies that he was in any way at fault, and charges that Canning, who was driving the car in which Richard was riding, and the said Richard as well, were intoxicated, each to the knowledge of the other, and that therefore the negligence of Canning, which Triegle alleges was solely responsible for the collision, should be imputed to Richard. Triegle further charges that, just before the crash, Richard had diverted Canning's attention from the operation of his car by suggesting that he look at an exhibition of fireworks nearby.

Canning, in his answer, declares that he and Richard had previously imbibed rather freely of intoxicating liquors, and that Richard, knowing of the condition of both of them, was negligent in allowing himself to be driven by one known to be under the influence of liquor; that, in so doing, he assumed the risk of such injury as might result.

In the district court there was judgment for both defendants. Plaintiff's suit was dismissed, and he has appealed.

 The accident occurred just after midnight in the early morning of January 1, 1932,

*Rehearing denied Feb. 18, 1935.

at the corner of Carrollton avenue and Nelson street. The car of Canning, in which Richard was a guest passenger, was on its way out Carrollton avenue, and the car of Triegle was going up Nelson street, and it was the purpose of its driver to cross Carrollton avenue. Just before reaching Carrollton avenue, Triegle stopped his car, and, as he did so, he saw the Canning car approaching at a rapid rate but more than half a square away. Believing that there was ample time to cross, he entered the intersection and had almost crossed the roadway on which the Canning car was approaching when it struck his car in the left side, apparently without having diminished its speed at all.

We feel that the record shows that Triegle was not at fault in entering the intersection, because when he did so the other car was so far away that it could not, except by exceeding the legal speed limit by a large margin, have reached the crossing in time to render an accident imminent. In such a situation the driver of the car intending to cross the pathway of the other need not wait, but may proceed unless it is evident that to do so will create an emergency.

In Simpson v. Pardue et al., 15 La. App. 341, 131 So. 854, 855, is found the following: "It must be conceded that the primary duty of avoiding the collision rested upon the plaintiff, since he was driving his car on the less favored street. He was required to keep a lookout for vehicles on the favored street. He should have had his car under control, and should have exercised more care and caution than the driver on the favored street. However, he was not required to wait before attempting to cross until there was no vehicle in sight on the favored or right of way street, and it was only necessary that it should appear that there was a reasonably safe opportunity to proceed. His action in crossing the intersection must be considered in the light of the surrounding circumstances, and, if the Packard, which was on the favored street, was at such a distance from the intersection as would suggest to the mind of a reasonably prudent person that the crossing might be undertaken without danger of collision, he was justified in doing so." See, also, Bethancourt v. Bayhi et al. (La. App.) 141 So. 111.

We conclude that Triegle was not at fault, and that the accident resulted from the negligence of the driver of the other car.

██ Nor can we escape the conviction that the condition of Canning was such as to render it dangerous for him to operate an automobile. He had had several drinks during the few hours preceding the accident; just how many we are not told; but we can best judge of the effect of these drinks by his actions just after the accident. His attempt to fight with a police officer and his statements made in the presence of many witnesses, including those at the police station, indicate a condition which leaves us convinced that he was incapable of exercising the care and discretion which are so necessary in the safe operation of an automobile, particularly on such an occasion as at midnight on New Year's Eve.

The evidence does not conclusively show that plaintiff was in the condition in which we find that his friend was, but, if he was entirely sober, then his better judgment should have prevented his accepting so dangerous an invitation.

Canning's condition must have been obvious. He and Richard had been together for several hours, and though, at the various homes at which they had visited, they may have been separated for a few moments, they were sufficiently together for Richard to have become fully aware of the fact that his friend was imbibing freely of intoxicating liquors.

If it is actionable negligence to rent or loan an automobile to one who is manifestly intoxicated (Baader v. Driverless Cars, Inc., 10 La. App. 310, 120 So. 515), then it is certainly negligence, which will prevent recovery, to ride with a driver obviously under the influence of liquor.

██ We have given some thought to the contention that the defense of contributory negligence is not available to Canning because of his denial on the witness stand that he was intoxicated at the time of the accident. Although, in his answer, he had declared "that he was under the influence of alcohol to quite an extent to the knowledge of plaintiff," nevertheless, when he was sworn as a witness, he stated that he had not imbibed sufficiently to impair his capacity to drive an automobile. It is argued from this that, since he himself swears that he was not intoxicated, the defense that Richard was negligent in riding with him while in an intoxicated condition should not be permitted to be set up by him. However, in the answer he states that he "has no financial interest in the defense of this suit whatsoever and that the accident and financial responsibility therefor has been assumed by the Employer's Liability Insurance Corporation, Ltd."

While we are well convinced that there has been no collusion in this case between the plaintiff and the principal defendant for the

purpose of enabling plaintiff to recover from the insurer, nevertheless, if the contention made here should be sustained, it would open the door in similar situations to fraudulent collusion between a plaintiff, injured in such an accident, and the nominal defendant, and would permit an insurer to be mulcted in damages by reason of being deprived of its substantial defense because of the refusal of the nominal defendant to admit his intoxication. We feel that the ends of justice will be best served by permitting the real defendant, the insurance company, to prove the actual fact of intoxication, which it has done abundantly by other evidence.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.