About 4 o'clock of the afternoon of November 19, 1941, a collision occurred on Youree Drive, at its intersection with Archer Street and within the corporate limits of the City of Shreveport, between a small motor truck owned by plaintiff, James L. White, and an automobile belonging to J. William Neff, Jr.
The vehicles, both of which sustained damage, were being operated by duly authorized employees of their respective owners. J.H. Kelly, who had driven for plaintiff for 18 years, was the driver of the truck; and Carroll McFadden, aged 18, operated the automobile.
Plaintiff White, doing business as White Cleaners and Dyers, asks a judgment in this cause against Neff and his insurer, the Metropolitan Casualty Insurance Company of New York, for $294.90, charging that the accident occurred as a result of McFadden's negligence.
Neff denies that his employee was negligent, asserts that negligence on the part of Kelly proximately caused the collision, and reconvenes for the damages suffered by his automobile. Alternatively he attributes contributory negligence to plaintiff's driver.
The trial court rejected Neff's reconventional demand and granted judgment to plaintiff for the amount claimed by him. The defendants are appealing.
In the vicinity of the scene of the accident Youree Drive is a street of the boulevard type and courses generally in a north and south direction. Its all-over width is 60 feet. Except where intersected by other streets, it is made up of two 19 foot traffic lanes separated by a grassy neutral ground 22 feet wide. At the intersections pavement provides the surface for its entire width of 60 feet. This condition endures at the locus of the accident, at which place Archer Street angles into Youree Drive from the east but does not cross it.
Shortly before the collision, plaintiff's truck was parked against the west curb of Youree Drive, directly opposite the entrance of Archer Street, headed in a southerly direction. Kelly, after making a delivery at a nearby house, entered the truck, started the engine and commenced to make a left turn in the intersection. He purposed to gain the east side of the street and proceed north thereon. His truck was about the center of the 60 foot paved intersection when defendant's automobile, driven by McFadden and which had been traveling toward the south in the west traffic lane of Youree Drive, crashed into it.
The right front part of the automobile struck the truck's left side near the driver's seat. McFadden's car stopped at about *Page 290 
the point of contact. The truck, while still in low gear, crossed the thoroughfare's east side, went over the curb south of the Archer Street entrance, and came to rest on the lawn of a dwelling.
Kelly's version of the accident is that on entering his truck he looked into the rear view mirror and observed the automobile "approaching way down the street — I thought plenty far to turn with a car coming at normal speed. So I held my hand out, made my turn, got about half way around and I heard him try to apply his brakes, and all at once he ran right into me." The automobile on first being seen was approximately 450 feet away. When it was about 200 feet from him, Kelly's attention was again attracted to it. Regarding this last distance he said: "That's where I noticed it after he had started sliding the brakes I noticed it then, and I could tell he was driving faster than I figured and I tried to get out of his way so he could pass behind me and so he kinder turned towards me the way I was going and hit me in the middle of the street."
The rear end of the truck, when the crash occurred, was approximately 20 feet away from the west curb.
A disinterested witness, one J.L. Schober, testified that he was driving north in the east traffic lane of Youree Drive and observed the collision. He saw the approaching McFadden automobile and heard the sound made by its tires when the brakes were applied more than 200 feet from the scene of the collision; and that it was then traveling "every bit of 40 or 50 miles." It swerved to the left, struck the truck and stopped in the center of the intersection.
McFadden, the driver of the Neff automobile, stated that he was proceeding south on Youree Drive between 30 and 35 miles per hour. He noticed no signal given by Kelly and was "practically right on him" when knowledge of the truck's turning was first obtained. The distance then intervening could not be estimated. Neither did he remember whether or not the brakes of the automobile were applied, his testimony in this respect being: "That is something I cannot say, it was all so sudden. I had no time whatever to do anything. I had no time to do anything except turn my wheel." Contact between the vehicles occurred, said he, slightly west of the center of the street.
We are satisfied that McFadden was driving his machine at an unreasonable and excessive rate of speed and one reprobated by the ordinances of the City of Shreveport. Such conclusion is supported by a preponderance of the testimony. Also it is borne out by the established physical facts. Without a speed of that kind the truck, following the crash, would not have been catapulted the distance that it was and over the east curb of Youree Drive. Consequently, there was gross negligence on McFadden's part.
It is also our opinion that McFadden was not "practically right on" the Kelly truck, as he stated, when that machine commenced the left turn. Rather we believe to be correct the estimates of Kelly and Schober that McFadden was more than 200 feet away immediately after the commencement of the truck's maneuver. In corroboration of those estimates is the fact, conclusively shown by the evidence, that the impact took place near the center of the 60 foot intersection. Considering the excessive speed of the Neff automobile, the truck would not have traversed the distance that it did before being struck had the machines been in very close proximity to each other at the commencement of the turn. The point of collision, in that event, would have been much nearer the west curb.
Next, as more than 200 feet separated the vehicles shortly after the beginning of Kelly's turn, it can be correctly said, we think, that McFadden was much farther away, perhaps the 450 feet that Kelly suggested, when plaintiff's employee first looked into the rear view mirror and saw the approaching machine.
On observing the automobile at the mentioned distance of 450 feet, but not then being aware of its excessive speed, Kelly was justified in believing that it was approaching in a lawful manner and that he had sufficient time in which to negotiate in safety his intended turn to the left. Had an approach of that character been made, Kelly would have safely completed his turning and the automobile could have continued along the right traffic lane of Youree Drive without mishap. From this it follows, and we hold, that the gross negligence of the driver McFadden in speeding and not having his car under the required control was the proximate cause of the collision. *Page 291 
Defense counsel have cited numerous authorities in the Louisiana Jurisprudence, including Fields v. Owens, La.App., 186 So. 849, wherein it was held that a left turn is a particularly dangerous and hazardous move to make and a person attempting it without using great caution and care is guilty of actionable negligence. The announced doctrine is sound and was correctly applied to the facts that existed in the cited cases. But those authorities are not decisive of the controversy under consideration. A close study of them will show that the colliding vehicles were in very close proximity to each other when the left turn was undertaken; while here no condition of that kind existed.
The amount awarded plaintiff by the trial court accords with an agreement of counsel respecting the damage sustained by his car.
The judgment is affirmed.